UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| LESTER WAGNER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 3:20-CV-430-RLJ-HBG ) |
| RUSTY LOZA and TAMMY REAGAN, | ) ) ) |
| Defendants. | ) ) |

# **MEMORANDUM OPINION**

Defendants Rusty Loza and Tammy Reagan have each filed separate motions for summary judgment in this pro se prisoner's civil rights action for violation of 42 U.S.C. § 1983 [Docs. 18 and 22]. Plaintiff has filed a response in opposition to Defendant Reagan's motion [Docs. 28-30]. Upon consideration of the parties' pleadings, the summary judgment evidence, and the applicable law, the Court finds that summary judgment should be **GRANTED** in favor of Defendants, and this action should be **DISMISSED**.

## I.     PLAINTIFF'S RELEVANT ALLEGATIONS

On various dates between July 2020 and September 2020, while housed at the Claiborne County Jail ("the Jail"), Plaintiff filed several medical requests asking Nurse Rusty Loza to contact Ft. Sanders Medical Center to schedule a surgery to place stents in Plaintiff's heart [Doc. 2 p. 3-4]. In each of these requests, Plaintiff also requested evaluation and treatment for chronic Hepatitis C [*Id*. at 4]. When Defendant Loza allegedly failed to request Plaintiff's surgery or schedule an evaluation for Hepatitis C, Plaintiff filed medical requests with Jail Administrator Tammy Regan which went unanswered [*Id*.].

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if resolving that fact in favor of one party "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To establish an entitlement to summary judgment, the moving party must demonstrate that the nonmoving party cannot establish an essential element of his case for which he bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 322; *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson*, 477 U.S. at 248. If no proof is presented, however, the Court does not presume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 889 (1990).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof

to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), "conclusory allegations," *Lujan*, 497 U.S. at 888, or by a mere "scintilla" of evidence, *Anderson*, 477 U.S. at 252. It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan*, 497 U.S. at 888. Therefore, in considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible. Matsushita,* 475 U.S. at 586. (emphasis added). "[D]etermining whether a complaint states a plausible claim for relief. . . [is] context-specific[,] . . . requir[ing] the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

### III. SUMMARY JUDGMENT EVIDENCE

Plaintiff has been an inmate at the Claiborne County Jail on multiple occasions [Doc. 22-1 ¶7]. When he was booked into the Jail on April 2, 2019, he reported that he had Hepatitis C, had received a previous surgery for an abscess on his arm, and had multiple mental health issues [*Id*. at ¶8]. He did not report a heart condition [Doc. 22 at ¶¶8-9; Doc. 30 p. 34-35].

Plaintiff was booked into the Jail again on December 12, 2019, and he reported that he had Hepatitis A and C and had previous surgeries on both shoulders [Doc. 22 at ¶10]. He did not report a heart condition [Doc. 22-1 ¶10; Doc. 30 p. 32-33].

Defendant Rusty Loza, a licensed practical nurse providing medical services to the Jail pursuant to a contract between Claiborne County and Southern Health Partners ("SHP"), performed a history and physical on Plaintiff on December 13, 2019 [Doc. 22-1 at ¶¶1, 2, 11].

Plaintiff advised Defendant Loza that he had Hepatitis C but did not report a heart problem [*Id*. at ¶11].

Defendant Loza performed another admission history and physical on Plaintiff on February 11, 2020, where Plaintiff reported a Vitamin D deficiency, Bipolar Disorder, Schizophrenia, and Hepatitis C [*Id*. at ¶12]. Plaintiff did not report a heart problem [Doc. 22-1 at ¶12; Doc. 30 p. 37]. Additionally, medical notes from the Jail dated February 11, 2020, show that Plaintiff claimed no history of heart problems [Doc. 20-4]. A physical examination revealed no obvious heart abnormalities either [*Id.*].

On June 5, 2020, one month before his first claimed medical request for heart surgery, Plaintiff was seen by jail medical staff for a complaint of a "3-inch pustule on abdomen" [Doc. 20-5]. The notes from that visit evidence no complaint about Plaintiff's heart [*Id.*]. On June 12, 2020, Plaintiff was treated for a spider bite, and the medical provider ordered medications for Plaintiff [Doc. 20-8]. Plaintiff did not report heart problems at that time [Doc. 20-8; Doc. 22-1 at ¶14].

On July 6, 2020, Plaintiff submitted a medical request stating that he needed to schedule surgery to have stints placed in his lower two heart valves per the recommendation of a Knoxville heart specialist and requesting treatment for chronic Hepatitis C [Doc. 22-1 at ¶15; Doc. 30 p. 43].

On July 17, 2020, Plaintiff swallowed a razor blade and two unknown medical objects because he was "over it" [Doc. 20-6 p. 1]. Plaintiff was placed on suicide watch and a subsequent imaging of his abdomen showed a nail in his abdomen [*Id.*]. Follow-up radiology conducted on July 17, 2020, confirmed that Plaintiff's body was free of metallic foreign bodies [*Id.* at 2].

On July 30, 2020 and August 12, 2020, Plaintiff submitted additional medical requests asking for heart surgery to be scheduled to place stints in his lower heart valves, as he "left St. Mary's twice against medical advice" without having it done [Doc. 30 p. 41, 42]. In the same requests, he also asked to take treatment for Hepatitis C, as he had never received treatment [*Id.*].

4

Plaintiff complained of a headache on September 15, 2020 and received Tylenol [Doc. 20-8 p. 3].

On September 18, 2020, Plaintiff requested that Defendant Loza contact Fort Sanders and schedule him for heart surgery, as he twice "left the hospital against medical advice without having it done" [Doc. 30 p. 40-41]. He also again requested treatment for chronic Hepatitis C, stating that he had never received treatment [*Id*. at 41].

Defendant Loza requested Plaintiff's prior medical records from Fort Sanders Medical Center [Doc. 22-1 ¶¶ 27-28]. Those records were reviewed by the Jail's physician, who determined that Plaintiff did not require surgery or additional treatment [*Id*. at ¶29].

Plaintiff's prior medical records demonstrate that Plaintiff was seen at Fort Sanders Regional Medical Center in Knoxville, Tennessee, for cellulitis related to intravenous drug use from December 27, 2018 to January 1, 2019 — approximately 18 months prior to the date Plaintiff claims he made his first request for heart surgery [*See* Doc. 20-1 through 20-3.]. Those records indicate that Plaintiff was previously seen at the University of Kentucky, where an evaluation for endocarditis[1] was performed [Doc. 20-1]. Although the notes state that "some valve abnormalities were noted," Fort Sanders did not deem Plaintiff a surgical candidate, noting that "blood cultures are negative so far," and "there is no definitive evidence of endocarditis" [Docs. 20-1 and 20-2]. The examining physician at Fort Sanders noted that "[w]ith negative blood cultures, I am inclined not to pursue TEE[2] at this time" [Doc. 20-3].

---

[1] Endocarditis is an infection in the heart's inner lining. Mayo Clinic, *Endocarditis*, https://www.mayoclinic.org (last visited December 13, 2021).

[2] A trans-esophageal echocardiogram ("TEE") is a procedure using echocardiography to assess the structure and function of the heart. Johns Hopkins, *Transesophageal Echocardiogram*, https://www.hopkinsmedicine.org (last visited December 13, 2021).

The notes from Plaintiff's December 30, 2018, visit at Fort Sanders also states that Plaintiff ignored the University of Kentucky's recommendations that he follow-up with a heart doctor and liver doctor because, in the words of Plaintiff, "I don't care about my heart or liver" [*Id.*].

Plaintiff's records contain multiple references to his Hepatitis C diagnosis [*See, e.g.*, Doc. 22-1 ¶11, 12, 15; Doc. 20-1; Doc. 20-3; Doc. 30 p. 32-33]. However, there is no evidence in the records that a doctor ordered treatment for that condition, or that Plaintiff displayed any signs of distress related to that condition. [*See* Doc. 22-1 ¶¶31, 34].

Additionally, between June 12, 2020, and September 15, 2020, Plaintiff was seen approximately 20 times by Jail staff [Doc. 20-8]. Log entries from these visits establish Plaintiff displayed no signs of distress [*Id.*]. There is no evidence that Plaintiff complained of any heart condition or Hepatitis C-related symptoms during any of these visits [*Id.*].

**IV.    DISCUSSION**

The Constitution does not guarantee a prisoner "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, the denial of constitutionally adequate medical care violates the Eighth Amendment's prohibition against cruel and unusual punishment, which proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994).

Where medical treatment has been provided, a prisoner's disagreement with the adequacy of care given does not implicate the Constitution. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1996). This is because "federal courts are generally reluctant to second guess medical

6

Case 3:20-cv-00430-RLJ-HBG   Document 35   Filed 12/16/21   Page 6 of 11   PageID #: 222

judgments and to constitutionalize claims which sound in state tort law.'" *Id.* (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Rather, the objective component of an Eighth Amendment denial-of-medical-care claim is satisfied if an inmate can show a failure to provide treatment where the inmate had a medical need diagnosed by a physician as mandating treatment, or treatment so cursory as to amount to no treatment at all. *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (citations and internal citations and quotation marks omitted). In cases where an inmate claims that his treatment was inadequate, the objective component requires plaintiff to "place verifying medical evidence in the record to establish the detrimental effect of the inadequate treatment." *Id.* at 738 (citation and internal quotation marks omitted).

The subjective component of an Eighth Amendment claim requires a plaintiff to prove that each defendant individually possessed a sufficiently culpable state of mind — one "equivalent to criminal recklessness." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40). Therefore, to establish an officer's liability, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Moreover, because of the deference afforded medical judgments by trained health care personnel, it is not "unconstitutional for municipalities and their employees to rely on medical judgments made by medical professionals responsible for prisoner care." *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) (internal quotation marks and citation omitted).

### A. Individual-Capacity Claims

As noted above, Plaintiff's ability to succeed on his claim depends on his ability to show deliberate indifference by Defendants. To establish the objective component of this claim, Plaintiff

first must establish either that he suffered from a medical need so serious it was obvious even to a lay person, or that he had a medical condition diagnosed by a physician that required treatment that Defendants refused to provide. *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898-99 (6th Cir. 2004); *Rhinehart*, 894 F.3d at 737.

During the time periods that Plaintiff claims his requests for treatment went unanswered (July 2020 through September 2020), Jail medical records contain no complaints of a heart condition and no diagnosis of a heart condition. Further, Plaintiff's prior medical records do not establish that he needed heart surgery or that heart surgery had ever been recommended for him [Doc. 22-1 ¶ 30; Doc. 20-1 p. 91; Doc. 20-2 p. 92; Doc. 20-3, p. 93]. Additionally, Plaintiff's medical records were obtained by Defendant Loza and provided to the Jail's physician, who determined that Plaintiff did not require any treatment [Doc. 22-1 ¶ 29]. Therefore, there is no objective evidence that Plaintiff had a serious medical need that required surgery.

Moreover, Plaintiff would have to present medical proof of a "detrimental effect" from any alleged delay in treatment in order to satisfy the objective component of his claim. *See Rhinehart*, 894 F.3d at 738; *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742-43 (6th Cir. 2001). Here, the undisputed evidence establishes that any heart-related issue had been ongoing since at least December 2018, and that Plaintiff elected not to seek treatment for that condition. In fact, according to Plaintiff's own medical requests, he left the hospital twice against medical advice [Doc. 22-1 ¶24; Doc. 30 p. 40-41]. Therefore, even if Plaintiff had evidence that heart surgery had been ordered for him, he has not shown how the delay from July to September 2020 caused any detrimental effect. *See Blackmore*, 390 F.3d at 898 (plaintiff must place verifying medical evidence in the record to establish detrimental effect of delay in treatment). Additionally, even if Plaintiff could show a worsening of his heart condition as a result of Defendants' actions, he would have to have an expert opine that the deterioration was due to the 2020 delay in treatment as

8

opposed to his own delay in seeking treatment since December 2018. Plaintiff has produced no proof of this.

Likewise, although Plaintiff began requesting treatment for Hepatitis C in July 2020, he admitted that he had never received treatment for it before and did not claim any change in medical condition or show signs/symptoms that made treatment for Hepatitis C necessary [Doc. 22-1 ¶¶ 15, 17, 31]. Therefore, even if Plaintiff needed treatment for that condition from July through September 2020, and even if such treatment had been ordered by a physician, Plaintiff would still have to prove that a deterioration in his condition occurred because of the four-month denial of treatment in 2020 as opposed to a worsening of his condition due to his own failure to seek treatment in years prior. Again, Plaintiff has not presented any proof of such.

Further, with respect to Plaintiff's claim that he should have received treatment for his heart or Hepatitis C, neither Defendant Loza nor Defendant Reagan could have ordered such treatment; any treatment would have had to be ordered by a physician or nurse practitioner [*See* Doc. 22-1¶ 33]. Further, as jail administrator and not a healthcare provider, Reagan made no medical decisions for inmates and reasonably deferred to the expertise of trained medical professionals. Accordingly, neither she nor Claiborne County may be held liable for deference to medical professionals. *See, e.g., Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009); *Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) ("Nor is it unconstitutional for municipalities and their employees to rely on medical judgments made by medical professionals responsible for prisoner care.") (internal quotation marks omitted).

Further, Defendant Loza did not ignore Plaintiff's medical requests or refuse to provide care for him, but rather, provided nursing care on multiple occasions and carried out orders that he received for Plaintiff's care [Doc. 22-1 ¶32].

9

The Court need not reach the subjective prong. Nonetheless, the Court notes that the same records demonstrating that Plaintiff's claims fail on the objective prong demonstrate that there is nothing in the records to indicate to Defendants that ignoring Plaintiff's requests for treatment would harm him. Plaintiff was requesting treatment for preexisting conditions he previously decided against treating, and no treatment had been ordered for either condition. That is, there is no evidence in the record from which Plaintiff could establish that either Defendant was aware of, and ignored, a substantial risk of serious harm to Plaintiff. *See Farmer*, 511 U.S. at 837.

The Court finds that Plaintiff has failed to demonstrate a that a constitutional violation occurred, or that, even if one occurred, that Defendants' respective actions were unreasonable. Accordingly, Defendants are entitled to qualified immunity for claims against them in their individual capacities. *See, e.g., Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (holding evaluation of qualified immunity requires the Court to conduct a three-pronged inquiry: (1) whether there was a constitutional violation; (2) whether the violated right was "clearly-established;" and (3) whether the official's actions were objectively unreasonable).

### B. Official Capacity Claims

Insofar as Plaintiff has sued each Defendant in his or her official capacity, he has essentially sued Claiborne County and SHP. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993) (finding in action against an officer acting in an official capacity, "the plaintiff seeks damages not from the individual officer, but from the entity from which the officer is an agent.").

To demonstrate liability against Defendants in an official capacity, Plaintiff must identify a municipal or corporate policy or custom and "must show that a policy or well-settled custom of the entity was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr.*

10

*Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (citation omitted). Therefore, Plaintiff must show a that a constitutional violation occurred, and that the County or company's execution of that policy or custom is responsible for the constitutional violation. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 505-06 (6th Cir. 1996).

Here, the Court has found that no constitutional violation occurred. Therefore, there can be no liability against the entity Defendants. Even so, Plaintiff has failed to suggest that any policy or custom of Claiborne County or SHP led to any constitutional violation. Accordingly, Plaintiff has failed to establish that there is an official-capacity liability in this action, and Defendants are entitled to summary judgment as to any claims against them in their respective official capacities.

## V. CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment [Docs. 18 and 22] will be **GRANTED**, and this action will be **DISMISSED WITH PREJUDICE**. The Court hereby **CERTIFIES** that any appeal from this order would not be taken in good faith. Therefore, should Plaintiff file a notice of appeal, this Court will **DENY** Plaintiff leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER**.

ENTER:

s/ Leon Jordan
United States District Judge